UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MYRNA JEAN LALONE,

          **Plaintiff,**         **CIVIL ACTION NO. 09-cv-12172**

   **vs.**

                                **DISTRICT JUDGE DAVID M. LAWSON**

**COMMISSIONER OF**          **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

          **Defendant.**
_____/

## REPORT AND RECOMMENDATION

**I.**    **RECOMMENDATION:**    This Court recommends that Plaintiff's Motion for Summary Judgment (docket nos. 14, 17) be DENIED, Defendant's Motion For Summary Judgment (docket nos. 15, 18) be GRANTED and the instant Complaint be DISMISSED.

*** 

**II.**    **PROCEDURAL HISTORY:**

       Plaintiff filed an application for disability and Disability Insurance Benefits and Supplemental Security Income on February 20, 2004 alleging that she had been disabled since October 27, 2003 due to shoulder pain. (TR 12, 39, 85, 323-25). The Social Security Administration denied benefits. (TR 51-55, 327-30). Administrative Law Judge Richard L. Sasena held a de novo hearing on June 1, 2006 and subsequently found that the claimant was not entitled to a period of disability or Disability Insurance Benefits or Supplemental Security Income because she was not under a disability within the meaning of the Social Security Act at any time through the

1

date of his June 17, 2006 decision. (TR 39-45). The Appeals Council granted Plaintiff's request for review and in an order dated November 2, 2006 remanded the claim for consideration of Plaintiff's subjective complaints. (TR 31-33). On remand, Administrative Law Judge Peter N. Dowd (ALJ) held a supplemental hearing on March 13, 2007 and subsequently found that the claimant was not entitled to a period of disability, Disability Insurance Benefits or Supplemental Security Income because she was not under a disability within the meaning of the Social Security Act at any time from October 27, 2003 through the date of the May 18, 2007 decision. (TR 12-19, 331). The Appeals Council denied Plaintiff's request for appeal. (TR 3-5). The parties filed Motions for Summary Judgment and the issue for review is whether Defendant's denial of benefits was supported by substantial evidence on the record.

## III.   PLAINTIFF'S TESTIMONY, MEDICAL EVIDENCE AND VOCATIONAL EXPERT TESTIMONY

### A.   Plaintiff's Testimony

Plaintiff was forty-seven years old at the time of the most recent hearing. (TR 337). Plaintiff has a high school education and past work experience that includes working as a merchandiser, cashier and copy center worker for Staples and as a telemarketer prior to employment with Staples. (TR 91, 103-04, 343-44). Plaintiff reported that as a cashier and copy center employee she frequently lifted up to fifty pounds, had to lift totes over her head to price them and had to handle, grab or grasp big objects for approximately seven hours per day. (TR 103). She reported that as a telemarketer the heaviest weight she lifted was less than ten pounds and she had to sit, write and pick up the telephone. (TR 104). Plaintiff stopped working in October 2003 due to a shoulder injury. (TR 341).

At the hearing Plaintiff testified that she had problems with her shoulders, generalized

osteoarthritis and dysthymic disorder/depression. (TR 346). Plaintiff explained that both shoulders bother her and she is depressed because she is not able to work because of her shoulder impairments and she feels her "freedom was taken" away from her. (TR 346). Plaintiff testified that her shoulder pain is constant and she rated it as an eight on a scale of ten. (TR 347). Plaintiff testified that her doctor limited her to lifting three pounds with the left shoulder and ten to twelve pounds with the right shoulder and recommended performing in home exercises to build strength. (TR 247-48). She testified that she is not supposed to engage in pushing, pulling or overhead reaching. (TR 348). She testified that anti-inflammatory medication does not seem to help and she takes Premarin, hydrochlorothiazide, Metoprolol, Vicodin 500, Celebrex, Lidocaine cream, and Darvocet as needed. (TR 348-50).

At the hearing Plaintiff testified that she does not prepare foods and her son cooks. (TR 351). Plaintiff reported earlier that she prepared meals and did housework, including laundry and vacuuming. (TR 95-96). She uses the computer once in a while, watches television and does light housework. (TR 350-52). Plaintiff testified that her left shoulder was no better after the September 5, 2006 surgery and she cannot perform lateral movement or a lot of twisting or turning with her shoulders. (TR 355). For this reason, she alleged could not perform the jobs which the prior ALJ found that she could perform, including assembler, inspector or information clerk. The ALJ asked her to consider of all the millions of jobs in the economy which are available and whether she could she do any of the jobs, to which Plaintiff answered "yes." (TR 356).

**B.  Medical Evidence**

On October 27, 2003 Plaintiff reported to the emergency room complaining of an exacerbation of her right shoulder pain, which had occurred two years prior while moving stock at work. (TR 159-60). X-rays of the right shoulder showed moderate AC joint degenerative changes and "moderately prominent arthritic change at the AC joint." (TR 162). Plaintiff was referred to five physical therapy sessions beginning October 30, 2003. (TR 163-66). Plaintiff's range of motion was noted to be within functional limits with discomfort at the end range and it was concluded that she had not made significant changes during therapy, including in pain. (TR 163). On November 7, 2003 Dr. Prouty restricted Plaintiff from lifting or pulling with the right arm until November 24, 2003. (TR 168).

Alexander Iwanow, M.D., examined Plaintiff on January 15, 2004 and reported that at that time she was not taking any medication. (174-76). On examination, upper extremity testing was 5/5 on the left and 4/5 on the right with "complaints of pain and decreased active range of motion on the right shoulder testing." (TR 174-75). Dr. Iwanow reported his diagnostic impression as glenohumeral labral tear with secondary rotator cuff problems on the right shoulder. (TR 174). On February 18, 2004 Dr. Iwanow completed a Medical Examination Report listing Plaintiff's diagnosis as internal derangement of the right shoulder. (TR 172). He noted Plaintiff's restriction as "no work" with right arm from January 15, 2004 through April 15, 2004. (TR 173, 176).

On March 23, 2004 Jerome V. Ciullo, M.D., reported that Plaintiff complained of right shoulder pain which developed in 2001 while working. (TR 194, 178-82, 297). Dr. Ciullo noted Plaintiff's report that she had not responded to one month of physical therapy and cortisone shots made her shoulder "worse." (TR 194). The doctor diagnosed right shoulder rotator cuff tendinitis, postural change, locked A/C joint/A/C joint arthritis, and noted a "question of biceps tendon partial

detachment/SLAP lesion." (TR 194). An April 2004 CT, arthrogram and ultrasound of the right shoulder revealed a focal full thickness tear without retraction of the supraspinatus tendon portion of the rotator cuff and osteoarthritic degenerative changes of the acromioclavicular joint. (TR 206-09).

Larry G. Thompson, M.D., completed a state agency review and Physical Residual Functional Capacity Assessment dated April 16, 2004. (TR 184–192). Dr. Thompson reported Plaintiff's diagnosis as right shoulder injury and concluded that she is limited to lifting twenty pounds occasionally and ten pounds frequently, standing and/or walking six hours and sitting six hours in an eight-hour work day, and is unlimited in the ability to push and/or pull except as limited for lifting and/or carrying. (TR 185). Plaintiff may occasionally climb ramps and stairs, kneel, crouch or crawl, never climb ladders, ropes and scaffolds, and may frequently balance or stoop. (TR 186). Plaintiff is limited to occasional overhead reaching with her right upper extremity, but may otherwise perform constant reaching, handling, fingering and feeling. (TR 187).

On May 11, 2004 Dr. Ciullo reported that Plaintiff's condition remained unchanged and she needed an operative repair. (TR 195). On August 10, 2004 Dr. Ciullo completed a return to work/disability certificate stating that Plaintiff may return to work only with the following restrictions: "No pushing, pulling or lifting greater than 12 pounds. No overhead activity. No work above shoulder level. No power, impact, vibrating or torqueing tools." (TR 223).

In April 2005 Dr. Ciullo reported that an x-ray showed that Plaintiff's arthritis at the A/C joint had gotten worse. (TR 238). On May 16, 2005 Plaintiff underwent surgery on the right shoulder with Dr. Ciullo, including right rotator cuff repair, thermal capsular shift and subacromial decompression. (TR 197, 198, 212-19, 226-36). On August 11, 2005, three months after the repair,

Plaintiff reported feeling better but continued to have a dull ache in the front of the shoulder. (TR 196). Dr. Ciullo reported that the x-rays showed a "Type I configuration of the acromion, a good Mumford gap" with the humeral head well centered on the glenoid socket. The x-rays were reported to be normal postoperative films and Plaintiff was advised to continue with physical therapy and return for reassessment in eight weeks. (TR 196). Plaintiff underwent physical therapy from June 2005 through September 2005. (TR 200-05). Objective changes reported in July, August and September 2005 were increases in range of motion, strength and function and decreases in pain. (TR 201-05).

In November 2005 Plaintiff was examined by Thomas J. Haverbush, M.D., P.C., for Plaintiff's complaints of continued right shoulder pain and left should pain with numbness in the fingers of the left hand. (TR 247-50). The doctor concluded that Plaintiff had right shoulder rotator cuff tendinitis and SLAP lesion with differential diagnosis including rotator cuff tear. (TR 250). On March 6, 2006 the doctor reported that Plaintiff's right shoulder was tender at the AC joint and the anterior acromial area yet range of motion was full. (TR 252). X-rays of the left shoulder revealed decreased AC joint space and a "small bony projection beneath the distal inferior aspect of the clavicle." (TR 252). An MRI showed some fluid in the bursa and degeneration in the rotator cuff but did not confirm a complete tear. (TR 253, 256). Dr. Haverbush reported that Plaintiff stated that physical therapy and injections were not helpful and that he did not think his office would be able to help her. (TR 253).

In January 2006 Don Prouty, M.D., reported that Plaintiff's blood pressure needed to be monitored and that Plaintiff "needs increased exercise and weight loss to help." (TR 274). Dr. Prouty reported that in August 2006 Plaintiff's blood pressure was improved, but remained high.

(TR 272).  Plaintiff's Metoprolol was increased.  Dr. Prouty reported that a "[f]orm was filled out for disability for her because of the bilateral shoulder pain stating that she is unable to lift over 10 pounds or to work above her shoulders."  (TR 272).

In April 2006 Dr. Prouty reported that Plaintiff's range of motion in the bilateral shoulders was good, in May 2006 range of motion was mildly decreased and in July range of motion in the right shoulder was good.  (TR 254-55).  On September 5, 2006 Dr. Haverbush performed a left shoulder repair of the rotator cuff suturing the cuff to itself with resection arthroplasty of the AC joint.  (TR 269, 290-91, 294-95).  In November and December 2006 Dr. Haverbush reported that Plaintiff had tenderness "only with deep palpation and only to a very minor degree."  (TR 291).  The doctor opined that Plaintiff had "[d]uration of disability for full use of the left upper extremity estimated to extend from the date of surgery through 11/1/06."  (TR 260).  The record contains an undated Work Status Report in which Dr. Haverbush concluded that due to a diagnosis of left shoulder surgery, Plaintiff was fully disabled through March 31, 2007.  (TR 200).

The ALJ ordered a consultative examination, which Plaintiff underwent on January 10, 2007 with Kerstyn C. Zalesin, M.D.  (TR 297-301).  Dr. Zalesin reported that Plaintiff's grip strength was intact and dexterity unimpaired.  The doctor reported mild diminished range of motion of the bilateral shoulder left greater than right.  (TR 298).  She reported that Plaintiff had shoulder tenderness at the deltoid area and AC joint and biceps insertion point on the left greater than right.  "Passive arch test was negative on the right and positive at the left at 90 degrees."  (TR 298).  Motor strength was 5/5 in all extremities.  (TR 300).  The doctor concluded that Plaintiff had a rotator cuff tear with surgical repair on the right in 2005 and on the left in 2006 with continued pain and weakness, "limitation on range of motion at the shoulder, left greater than right" and noted that

Plaintiff was undergoing physical therapy and using pain medication for relief. (TR 301).

Dr. Zalesin completed a medical source statement the same date and concluded that Plaintiff may occasionally or frequently lift less than ten pounds, is not limited in standing and/or walking or sitting, and is limited in pushing and pulling with the upper extremities. (TR 302). The doctor opined that Plaintiff may perform all postural limitations frequently, including climbing, balancing, kneeling, crouching, crawling or stooping and is limited in reaching in all directions, including overhead, yet is unlimited in handling, fingering and feeling. (TR 304). Plaintiff is limited to occasional reaching. (TR 304).

On February 22, 2006 Plaintiff underwent an assessment with community mental health for complaints of depression. (TR 239-46). Plaintiff's presentation, speech, impulse control, thought process and thought content were all reported to be within normal limits. (TR 239-40). Plaintiff was referred to out patient services and advised to continue with her family doctor for her Paxil prescription. (TR 245). The treatment provider, Kathy Ziemer, LPC, concluded that Plaintiff had a primary diagnosis of dysthymic disorder (300.4) and assessed a GAF of 45. (TR 246). Plaintiff underwent further therapy on August 17, 2006, November 27, 2006 and December 15, 2006. (TR 264-66).

### C.    Vocational Expert

The VE testified that Plaintiff's past work as a cashier and counter clerk was medium in exertion and unskilled, as a telemarketer was sedentary and unskilled, as a fast food worker including dishwasher was light and unskilled, as a kitchen helper was light and unskilled and as a child care provider was light and unskilled. (TR 358).

The ALJ asked the VE to consider an individual with the same age, education and work

experience as Plaintiff, with the ability to perform sedentary work with the need for a sit/stand option, no climbing ladders, only occasional climbing stairs and ramps, occasional balancing, stooping, kneeling and crawling, no overhead reaching, no pushing or pulling with either arm and limited to simple, routine and repetitive tasks in a stable work environment. The VE testified that such an individual could perform Plaintiff's past work as a telemarketer. (TR 358).

The VE testified that even with an added exertional limitation to lifting no more than three pounds with the left upper extremity and ten to twelve pounds with the right, such an individual could perform Plaintiff's past work as a telemarketer. (TR 359). The VE testified that such an individual could perform other jobs in the economy including surveillance system monitor (approximately 1,570 jobs), information clerk (13,400 jobs), and inspector (1,900 jobs). The VE testified that there are 5,300 unskilled telemarketer jobs in the region defined as the lower peninsula of Michigan. (TR 360). The VE confirmed that her testimony was consistent with the Dictionary of Occupational Titles (DOT). (TR 360).

## IV.     ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that although Plaintiff met the insured status requirements of the Social Security Act through December 31, 2008, had not engaged in substantial gainful activity since her alleged onset date of October 27, 2003 and suffers from bilateral shoulder impingements status post 2005 and 2006 surgical repairs, she does not have an impairment or combination of impairments that meets or equals the Listing of Impairments. (TR 15-16). The ALJ found that Plaintiff had the residual functional capacity to perform a limited range of sedentary work including her past relevant work and therefore she was not suffering from a disability under the Social Security Act. (TR 16-19).

## V.    LAW AND ANALYSIS

### A.    Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions.  Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997).  Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528.  It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence or decide questions of credibility.  *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole.  *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).  If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion.  *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

### B.    Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff was required to show that:

1)      she was not presently engaged in substantial gainful employment; and

2)      she suffered from a severe impairment; and

3)      the impairment met or was medically equal to a "listed impairment;" or

4)      she did not have the residual functional capacity to perform her relevant past work.

*See* 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). If Plaintiff's impairments prevented her from doing her past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education and past work experience to determine if she could perform other work. If she could not, she would be deemed disabled. *See id.* at §§ 404.1520(g), 416.920(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

Plaintiff represents herself in this matter. The Court is mindful that it is required to construe pro se Plaintiff's pleadings liberally and hold them to "less stringent standards than formal pleadings drafted by lawyers." *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). Plaintiff submitted medical records with her Motion for Summary Judgment (docket no. 14) and requested an extension of time to submit additional medical records. The Court granted Plaintiff's request for extension and

Plaintiff submitted the additional records on May 28, 2010. (Docket no. 17). The Court gave Defendant time to respond. (Docket nos. 18). The substance of Plaintiff's motion seeks a remand pursuant to sentence six of 42 U.S.C. § 405(g) for consideration of additional medical evidence. Plaintiff also mentions that she has depression, arthritis in her upper back, neck, shoulder and right ankle and high blood pressure. This matter was remanded to the ALJ by the Appeals Council for consideration of Plaintiff's subjective complaints. (TR 31-33).

### C.    Analysis

### 1.    *Whether The ALJ Properly Considered Plaintiff's Subjective Complaints*

Plaintiff did not argue that the ALJ failed to properly consider her subjective complaints and credibility. However, in light of the Appeals Council's remand and Plaintiff's reference to additional impairments and conditions in her Motion for Summary Judgment, the Court has reviewed the ALJ's May 18, 2007 decision on these issues.

In accordance with the Appeals Council's Order, the ALJ on remand properly considered Plaintiff's subjective complaints and credibility. The Court notes that prior to or at the second hearing Plaintiff submitted updated medical evidence and the ALJ ordered a consultative examination. (TR 12). As with the first hearing, Plaintiff was again informed of her right to representation at the hearing and again chose to appear without representation. (TR 58, 67, 333-34).

The ALJ fully explained his credibility determination with respect to Plaintiff symptoms as required by the Regulations. *See* 20 C.F.R. §§ 404.1529, 416.929; *see also* SSR 96-4p and 96-7p. Furthermore, to the extent that the ALJ found that Plaintiff's statements about her limitations and symptoms were not substantiated by the objective medical evidence in the record, the ALJ followed the Regulations, which explicitly provide that "we will not reject your statements about the intensity

and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). In addition to objective medical evidence, the ALJ must consider all the evidence of record in making his credibility determination. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994).

The ALJ considered Plaintiff's medical treatment and noted aside aside from the 2005 and 2006 surgeries, it is predominately pain medication. Plaintiff also had improvement in range of motion, strength and functionality with a decrease in pain following physical therapy in July, August and September 2005. (TR 201-05). The ALJ pointed out that Plaintiff's daily activities are "relatively normal" and include driving, personal care tasks, housework, recreational activities and computer use. (TR 17-18, 97-98). Plaintiff reported that she is able to wash dishes, do the laundry, vacuum and clean the house. (TR 95, 114-15). In May 2004 she reported that the house chores took longer and she was doing them a little at a time. (TR 122). She reads, watches television, listens to the radio and talks on the phone and visits friends. (TR 95-98). In March 2004 she reported that she is able to write for ½ hour per day but she cannot write as much as she used to. (TR 98, 129). She has no problems with personal care tasks. (TR 96). Prior to her August 2004 surgery she reported that due to her shoulder pain she can no longer lift items over her head or reach behind her back with her right arm and she has trouble lifting heavy pots and pans. (TR 96, 129-31).

The ALJ considered Plaintiff's complaint of depression and made reference to the community mental health records. The ALJ considered Plaintiff's mental impairment in accordance with 20 C.F.R. §§ 404.1520a and 416.920a and concluded that Plaintiff has only mild limitations

in activities of daily living and social functioning and no limitations in concentration, persistence and pace with no episodes of decompensation. The record supports these findings and there is no evidence of mental limitations greater than these. Plaintiff reported that she is able to follow written and spoken directions, she visits with friends in person and on the telephone, and she has not had problems paying attention or getting along with others. (TR 100, 353). The ALJ's findings with respect to Plaintiff's depression is supported by substantial evidence. There is no evidence of mental limitations greater than these and Plaintiff has not challenged these findings in her motion. The ALJ's findings regarding Plaintiff's severe shoulder impairments, her credibility and the extent of her symptoms are supported by substantial evidence.

2.    *Whether The Matter Should Be Remanded For Consideration Of New Evidence*

In cases where, as here, the Appeals Council declines to review the ALJ's decision, judicial review is limited to the evidence that was part of the record before the ALJ. *See Cotton v. Sullivan*, 2 F.3d 692 (6th Cir. 1993); *Casey v. Sec'y*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Wyatt v. Sec'y*, 974 F.2d 680, 685 (6th Cir. 1992). Furthermore, under 20 C.F.R. §§ 404.970(b), 416.1740(b). "[i]f new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision."

The "court is confined to review evidence that was available to the Secretary, and to determine whether the decision of the Secretary is supported by substantial evidence." *Wyatt*, 974 F.2d at 685 (*citing Richardson*, 402 U.S. at 401). The court may still remand the case to the ALJ to consider this additional evidence but only upon a showing that the evidence is new and material and "that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). This is

referred to as a "sentence six remand" under 42 U.S.C. § 405(g).  *See Delgado v. Comm'r of Soc. Sec.*, 30 Fed. Appx. 542, 549 (6th Cir. 2002).  The party seeking remand has the burden of showing that it is warranted.  *See Sizemore v. Sec'y of Health and Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988).  "A claimant shows 'good cause' by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ."  *Foster*, 279 F.3d at 357 (*citing Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (6th Cir. 1984)).  "In order for the claimant to satisfy his burden of proof as to materiality, he must demonstrate that there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence."  *Sizemore*, 865 F.2d at 711 (*citing Carroll v. Califano*, 619 F.2d 1157, 1162 (6th Cir. 1980)); *see also Cotton*, 2 F.3d at 696 ("Where a party presents new evidence on appeal, this court can remand for further consideration of the evidence only where *the party seeking remand* shows that the new evidence is material.")(emphasis added)(citations omitted).  "Evidence of a subsequent deterioration or change in condition after the administrative hearing is deemed immaterial."  *Wyatt*, 974 F.2d at 685 (*citing Sizemore*, 865 F.2d at 712).

Plaintiff submitted additional medical records dating from January 23, 2006 through October 22, 2008.  (Docket nos. 14, 17; TR 320-22).  As an initial matter, Plaintiff has not argued good cause or provided a reason for her failure to produce this evidence prior to the ALJ's hearing.  Some of the information existed before the hearing and is duplicative.  For example, the ALJ already considered evidence that Plaintiff had undergone a left shoulder rotator cuff repair, partial anterior acromionectomy and resection and arthroplasty of the acromioclavicular joint.  (Docket no. 14 pp. 29-30).  Dr. Haverbush's records dated March 6, March 17, August 16, October 13, and December

11, 2006 and a March 13, 2006 MRI of the left shoulder are duplicate records which appear in the evidence that was before the ALJ prior to the hearing and, in some instance, were directly cited by the ALJ in his decision. (Docket no. 14, pp. 12, 21-28; TR 16, 253, 270, 280, 290, 292). The letter dated August 16, 2006 from Dr. Haverbush to Dr. Prouty is a cover letter referencing Dr. Haverbush's report of the same date, which was included in the record before the ALJ. It is neither new nor material. (Docket no. 14 p. 24; TR 296). It is merely duplicative and has been considered by the ALJ in his decision.

Plaintiff has provided no reason for her failure to produce the evidence which is the result of a May 11, 2007 MRI of the cervical spine showing "postoperative osteophyte disc complex formation identified at C4/5 with minimal spinal canal stenosis as a result." (Docket no. 14 p. 11). The May 11, 2007 MRI is not material. The results show only minimal stenosis, which is again noted by Amarish S. Potnis, M.D., in his report dated October 8, 2007. (Docket no. 14, pp. 19-20). Dr. Potnis also reported upper extremity strength of 5/5 with shoulder and neck ranges of motion "close to full." (Docket no. 14 p. 20). The findings are not material.

Plaintiff has not shown that the remaining documents relate to the "period on or before the date of the administrative law judge hearing decision" and/or that they are not simply evidence of subsequent deterioration. 20 C.F.R. §§ 404.970(b), 416.1470(b). Also, the records are not material. Even if there were evidence from which to concluded that the records were found to related to the relevant period of time, they show ongoing left shoulder or bilateral shoulder pain consistent with the evidence considered buy the ALJ and they do not show evidence of restrictions greater than those found by the ALJ. For example, the records show that Plaintiff was diagnosed in February and March 2008 with left shoulder impingement syndrome, consistent with the ALJ's findings, and

despite the report that Plaintiff underwent a left shoulder arthroscopy, excision distal clavicle and arthroscopic rotator cuff repair on March 6, 2008 with Denise M. Stadelmaier, D.O., Plaintiff has not shown that this evidence would have resulted in a reasonable probability that the ALJ would have reached a different disposition of Plaintiff's disability claim. (Docket no. 14, pp. 13-15, pp. 6-7 appearing in duplicate at pp. 16-18, and images pp. 3-4). Dr. Stadelmaier reported that prior to surgery Plaintiff had "slightly diminished rotatory cuff strength but no focal weakness and no instability." (Docket no. 14 p. 6). Similarly, a potassium test result dated February 22, 2008 is not material. (Docket no. 14 p. 8).

Plaintiff underwent an electromyogram/nerve conduction study dated November 9, 2007, nearly six months after the ALJ's decision. (Docket no. 14 pp. 9-10). As set forth above, Plaintiff has provided no reason, good or otherwise, for producing this information after the date of the ALJ's decision. The Court should find that there is no evidence that these records relate to the period of time prior to the ALJ's decision in this matter and Plaintiff has not shown a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with this new evidence. The examining physician, Amarish S. Potnis, M.D., reported that Plaintiff had 5/5 strength in the upper extremities with Tinels' syndrome negative and Phalen's positive on the left. (Docket no. 14, p. 9). Plaintiff reported that her pain was significantly better with Vicodin and she reported pain at a 3 to 4 on a scale of ten, which the doctor noted was "half of baseline." (Docket no. 14, p. 9). The EMG revealed only mild distal medial slowing, more prominent on the left, which "could be compatible with carpal tunnel syndrome." The doctor concluded that there were "[o]therwise, no left electrodiagnostic findings of cervical radiculopathy, myopathy, or plexopathy." (Docket no. 14 p. 10).

Dr. Prouty's Medical Needs form dated September 16, 2008 was completed more than one year after the ALJ's decision, without explanation for the delay by Plaintiff. The form indicated that it is "unknown" whether Plaintiff can work at her usual occupation or "at any job." (Docket no. 17 p. 2). The evidence is ambiguous at best and not material. Dr. Potnis completed a medical examination report dated October 8, 2008, again more than one year after the ALJ's decision, without explanation. (Docket no. 17, pp. 3-4). The doctor did not complete the portion of the form regarding limitations and noted only "No work status indefinite." The diagnoses were noted to be based on Plaintiff's report. Again, the evidence is ambiguous and not material. Similarly, Plaintiff provided no good reason for the submission of a psychiatric evaluation dated October 22, 2008, more than one year after the ALJ's decision. (TR 321-22).

Approximately half of the "new" medical evidence is duplicative of that which was considered by the ALJ and Plaintiff has provided no explanation for her failure to produce this and the remainder of the evidence prior to the ALJ's decision. The Court should find that, although the evidence may show an ongoing shoulder condition, there is no basis for finding that the evidence is material. There is no reasonable probability that any of these records would have resulted in a different disability determination, including additional impairments or more restrictive limitations. For these reasons the Court should deny Plaintiff's request for remand pursuant to sentence six of 42 U.S.C. § 405(g).

### 3. Whether the ALJ's Step Four and Five Determinations Are Supported By Substantial Evidence

The ALJ concluded that Plaintiff has the RFC to perform "work which involves lifting of weight of less than 10 pounds and which requires only a limited use of the upper extremities for

pushing and pulling and for occasional overhead reaching." (TR 16). The ALJ found that Plaintiff has no limitations in sitting, standing and walking and that her restrictions were consistent with ranges of sedentary and light work[1]. (TR 17). The ALJ's RFC limitations are more restrictive than Dr. Thompson's findings dated April 16, 2004 and Dr. Ciullo's August 10, 2004 findings and are consistent with Plaintiff's testimony that she is restricted to lifting 12 pounds with her right arm[2], Dr. Prouty's August 2006 opinion that she cannot lift over ten pounds and Dr. Zalesin's January 2007 opinion that she can lift less than ten pounds. (TR 184–192, 223, 247-48, 272, 302).

The limitations set forth in the ALJ's RFC are supported by substantial evidence and all of the limitations were presented in the hypothetical question to the VE, who testified that such an individual could perform Plaintiff's past work as a telemarketer and a significant number of other jobs in the economy. The ALJ's findings at steps four and five are supported by substantial evidence.

## VI.    CONCLUSION

The ALJ's decision was within the range of discretion allowed by law and there is insufficient evidence for the undersigned to find otherwise. Plaintiff's Motion for Summary Judgment (docket nos. 14, 17) should be DENIED, Defendant's Motion for Summary Judgment (docket nos. 15, 18) should be GRANTED and the instant Complaint DISMISSED.

## REVIEW OF REPORT AND RECOMMENDATION

---

[1] Sedentary work is defined as work that "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.R.F. §§ 404.1567(a), 416.967(a). The ALJ's reference to light work is harmless error. The VE testified that Plaintiff's past relevant work as a telemarketer was sedentary in exertion. (TR 358).

[2] Despite Plaintiff's testimony that she is restricted to lifting three pounds with the left arm, the VE testified that such an individual would still be able to perform Plaintiff's past work as a telemarketer. (TR 247-48, 359).

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: August 17, 2010        s/ Mona K. Majzoub
                                 MONA K. MAJZOUB
                                 UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Myrna Lalone and Counsel of Record on this date.

Dated: August 17, 2010        s/ Lisa C. Bartlett
                                 Case Manager